IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | CONSOLIDATED UNDER |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| BARTEL, ET AL. | : | |
| | : | Certain cases on the |
| v. | : | 02-md-875 Maritime Docket |
| | : | (MARDOC), listed in the |
| VARIOUS DEFENDANTS | : | attached exhibits |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    AUGUST 26, 2013

I.   INTRODUCTION............................................. 2

II.  LEGAL STANDARD.......................................... 6

     A.   Motions to Dismiss based on Lack of Personal
          Jurisdiction under Rule 12(b)(2)................... 6

     B.   Motions to Dismiss based on Improper Service under
          Rule 4(h)......................................... 6

III. DISCUSSION.............................................. 7

     A.   Motions to Dismiss based on Lack of Personal
          Jurisdiction under Rule 12(b)(2)................... 7

          1.   History....................................... 7

          2.   Arguments by the Parties..................... 10

          3.   Relevant Law, Application & Analysis.......... 13

               i. Personal Jurisdiction over Non-Resident
               Defendants under Ohio Law..................... 13

                         a. There is no personal jurisdiction
                         over defendants...................... 16

                         b. Defendants did not waive the
                         personal jurisdiction defense....... 18

               ii. MDL Court May Not Transfer Cases.......... 21

     B.   Motions to Dismiss based on Improper Service under
          Rule 4........................................... 25

          1.   Arguments by the Parties..................... 25

          2.   Relevant Law, Application & Analysis......... 29

IV.  CONCLUSION............................................. 31

# I.    INTRODUCTION

Before the Court are 565 motions to dismiss[1] in cases
that are part of MDL 875, the consolidated asbestos products
liability multidistrict litigation pending in the District Court
for the Eastern District of Pennsylvania. The cases are on the
MDL's maritime docket ("MARDOC").[2]

---

[1]        The 565 motions comprise the following categories.

There are 418 motions to dismiss for lack of personal
jurisdiction that argue that there is a lack of personal
jurisdiction over the filing defendants. Some of these motions
make the alternative argument that their motions to dismiss
should be granted due to insufficient service of process. As the
Court today grants the motions to dismiss for lack of personal
jurisdiction, the Court need not reach the issue of whether
service was insufficient in those particular cases.

There are 147 motions that are styled as motions to
dismiss due to improper service of process. These motions argue
that although there was some attempt at service of process,
plaintiffs deviated from the applicable rules and thus service
was improper.

Initially, there were sixteen motions to dismiss that
argued that there was no record of service whatsoever (i.e.,
there was insufficient service). The parties have resolved those
motions, so the Court need not reach the issue of whether
service was insufficient in those cases.

[2]        The MARDOC cases account for approximately 2,671 cases
in MDL 875, the largest group of cases that still remains on
this multidistrict litigation docket.

Plaintiffs in these cases include former merchant
marines, representatives, survivors, and spouses ("plaintiffs"
or "the MARDOC plaintiffs").

On June 27, 2011, the MARDOC cases were referred to
the Honorable Elizabeth T. Hey, U.S. Magistrate Judge, for
oversight and supervision. Following a conference with counsel,
on October 4, 2011, the undersigned, together with Judge Hey,

Beginning in the mid-1980's, the Jaques Admiralty Law Firm[3] began filing cases in the Northern District of Ohio on behalf of merchant marines who were alleged to have been injured from exposure to asbestos-containing products located aboard commercial vessels. Named as defendants were manufacturers and suppliers of the accused products, and the shipowners themselves. Typically, each case named upwards of 100 defendants. Ultimately, by the year 2009, more than 50,000 cases had been filed involving millions of claims against hundreds of defendants.

The cases initially progressed in the Northern District of Ohio under the superintendencey of Judge Thomas

entered Administrative Order 25 (MARDOC only) ("AO 25"), available at http://www.paed.uscourts.gov/documents/MDL/MDL875/AO25%20(MARDOC%20ONLY).pdf, which set forth certain administrative rules for the cases as well as imposed certain initial discovery obligations. The cases were divided into seven groups, and on November 21, 2011, seven separate Case Management and Scheduling Orders were entered. (An Amended Administrative Order No. 25 (MARDOC only) was entered on June 26, 2013. This order changed certain filing procedures but substantively remained the same. It is available at http://www.paed.uscourts.gov/documents/MDL/MDL875/Amended%20AO%2025.pdf.)

The cases subject to this opinion fall within Group 1 of the MARDOC cases. Most cases on the maritime docket involve multiple defendants, and in some cases more than one defendant filed motions to dismiss due to lack of personal jurisdiction or improper or insufficient service of process.

[3] Attorney Leonard C. Jaques died in 1998, although the firm is still representing plaintiffs in these cases since coming under new management.

Lambros. Because the claims fell within the admiralty
jurisdiction of the court, they were administratively assigned
to a maritime docket, titled "MARDOC." <u>See</u> <u>In re Am. Captial
Equip., LLC</u>, 688 F.3d 145, 149 (3d Cir. 2012). In 1991, the
cases were consolidated and transferred to the Eastern District
of Pennsylvania as part of MDL 875 and assigned to Judge Charles
Weiner. <u>Id.</u> In May of 1996, Judge Weiner administratively
dismissed the cases then pending, finding that the claimants had
"'provide[d] no real medical or exposure history,' and had been
unable to do so for months." <u>Id.</u> (quoting <u>In re Asbestos Prods.
Liab. Litig. (No. VI)</u>, No. 2 MDL 875, 1996 WL 239863, at *1-2
(E.D. Pa. May 2, 1996)).

The MDL Court, however, allowed that any asymptomatic
case could be reactivated if a plaintiff became impaired and
could produce satisfactory evidence of "an asbestos-related
personal injury compensable under the law" and "probative
evidence of exposure[.]" <u>Id.</u> (quoting <u>In re Asbestos Prods.
Liab. Litig. (No. VI)</u>, 1996 WL 239863, at *5). Judge Weiner
continued to preside over the cases until his passing in 2005.

In 2005, Judge James Giles was designated to preside
over MARDOC (along with the land docket in MDL 875), where he
remained until his resignation from the bench in 2008.

In October, 2008, Judge Eduardo Robreno, the
undersigned, was appointed to succeed Judge Giles, and he has

4

presided over the MARDOC docket since that date.

Over at least the past 25 years, the MARDOC litigation
has reached Dickensian proportions. Plaintiffs have passed away;
memories have faded; corporations have filed for bankruptcy; the
legislature has enacted new laws; lawyers have come and gone,
and so have judicial officers. The one constant in this
scenario is that the MARDOC docket has grown in numbers,
complexity and scope.

Now, some 25 years later, the Court, with the
assistance of counsel, is called upon to divine the meaning of
less-than-pellucid orders entered long ago by prior courts, and
to disentangle the parties from a web of procedural knots that
have thwarted the progress of this litigation.

With this background in mind, the Court turns to the
adjudication of important threshold issues. One, does the Court
have personal jurisdiction over the defendants? Two, was service
of process upon defendants improper?

For the reasons outlined below, the 418 motions to
dismiss for lack of personal jurisdiction listed in Exhibit "A,"
attached, will be granted, and the defendants who filed the
motions will be dismissed from the cases.

As to the 147 motions to dismiss due to improper
service of process listed in Exhibit "B," attached, the motions
will be denied.

## II. LEGAL STANDARD

### A. Motions to Dismiss based on Lack of Personal Jurisdiction under Rule 12(b)(2)

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]here are specific analytical steps [the Court] must take in determining whether personal jurisdiction can be asserted over a nonresident defendant[,]" and "Rule 4(e) of the Federal Rules of Civil Procedure is the starting point." Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (citing Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). Rule 4(e) allows for personal jurisdiction over non-resident defendants to the extent authorized under the law of the state in which the district court sits. For purposes of a Rule 4(e) analysis in the present cases, the forum state in this case is Ohio.[4]

### B. Motions to Dismiss based on Improper Service under Rule 4(h)

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is

---

[4]     On issues of federal law or federal procedure, the MDL transferee court applies the law of the circuit in which it sits (here, the Third Circuit). See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 363 (E.D. Pa. 2009) (Robreno, J.) (citing In re Korean Air Lines Disaster, 829 F.2d 1171, 1178 (D.C. Cir. 1987)).

filed," then "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." The Third Circuit has interpreted this rule to mean that, even without good cause, the court can, in its discretion, provide additional time to cure rather than dismiss the defendants. Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

## III. DISCUSSION

### A. Motions to Dismiss based on Lack of Personal Jurisdiction under Rule 12(b)(2)

#### 1. History

Early in the litigation, and while the cases were pending in the Northern District of Ohio, the defendants in the case raised the issue of lack of personal jurisdiction. At an October 31, 1989 hearing held before Judge Lambros on the motions to dismiss for lack of personal jurisdiction, Judge Lambros found that there was no personal jurisdiction over the approximately 100 shipowner defendants named on the complaints.[5]

---

[5]     Not all of the MARDOC cases that are now pending in MDL 875 and are subject to this opinion were pending in 1989. Some cases were filed in the Northern District of Ohio subsequent to Judge Lambros' 1989 decision.

In doing so, Judge Lambros rejected plaintiffs' counsel's "national contacts" theory that, because maritime law strives to maintain uniformity throughout the country, a defendant who would be subject to jurisdiction in one United States jurisdiction should be subject to jurisdiction in <u>any</u> U.S. jurisdiction.[6]

At the same hearing, and crucial to the issues before the Court now, Judge Lambros stated that he would transfer the cases rather than grant the defendants' motions to dismiss. In response, the defense counsel requested time to consult with their clients regarding whether the clients would want their cases transferred to other jurisdictions where personal jurisdiction may lie, or whether they would want to waive personal jurisdiction arguments and remain in Ohio. Judge Lambros allowed counsel time to do so.

At the next hearing, on November 21, 1989, defense counsel stated that their clients could not make the decision whether to agree to the transfer or waive personal jurisdiction until the court ruled on other pending motions. <u>See</u> Pls.' Resp. in Opp., Exs. 5-1 & 5-2, Hr'g Tr. 2, Nov. 21, 1989, 02-md-875, ECF No. 2160-5 & 2160-6.

---

[6]     Plaintiffs now admit that this theory fails and no longer rely upon it. Hr'g Tr. 21-23, June 20, 2013, 02-md-875, ECF No. 2639. Plaintiffs never could present support for this theory in case law, statutes or otherwise.

The day after that hearing, on November 22, 1989, the court issued Order No. 40, which directed plaintiffs to "report the choice of forum as to those cases which are the subject of the [forthcoming Order No. 41] transfer order[.]" See Order No. 40, Pls.' Resp. in Opp., Ex. E at 1-2, 02-md-875, ECF No. 2129-7. Order No. 40 also provided that defendants who "wish to remain in [the Northern District of Ohio] need only file answers to the complaints." Id.

A month later, on December 29, 1989, Judge Lambros issued Order No. 41. See Order No. 41, Pls.' Resp. in Opp., Ex. F, 02-md-875, ECF No. 2129-8. Order No. 41 purported to initiate the process of transferring the cases in which he had found there was no personal jurisdiction. The order provided: "[Personal] [j]urisdictional motions of defendant shipowners were granted at the November 21, 1989 MARDOC conference[,]" based on "the insufficiency of minimal state contacts to invoke in personam jurisdiction." Id. All of the shipowners who were to be transferred were listed on Exhibit A to Order No. 41, and the relevant cases were listed on Exhibit B. The jurisdictions to which plaintiffs claimed defendants would be subject to personal jurisdiction were also listed on Exhibit B. All other defendants not listed in Exhibit "A" were to file answers. The answers filed were listed in Master Answer #1 and Master Answer #2, and specifically included a personal jurisdiction defense.

9

Defendants asked the district court to certify the issue for interlocutory appeal. Judge Lambros never ruled on the motion. Ultimately, for no reason apparent on the record, Judge Lambros did not issue severance orders identifying which claims and defendants were being transferred as identified on Exhibits "A" and "B," or, if they were to be transferred, to which jurisdictions they were to be transferred. Therefore, although the cases were ordered "transferred," in reality, they were never transferred to other jurisdictions and remained on the docket of the Northern District of Ohio until they were transferred and consolidated into MDL 875 beginning in 1991.

Now, more than twenty years later, this Court is asked to decide: Did Judge Lambros find the court had no personal jurisdiction over the defendants? Were the orders conditional or preliminary? Did the defendants waive the defense of personal jurisdiction by filing answers?

### 2. Arguments by the Parties

There are two categories of defendants in the MARDOC cases who argue that there is no personal jurisdiction over them. First, there are defendants with no Ohio contacts. Second, there are defendants who have some contacts with Ohio that are unrelated to plaintiffs' injuries.

As to the defendants with no Ohio contacts, plaintiffs no longer contend, as they did at first before Judge Lambros, that there is jurisdiction over these defendants under the "national contacts" or maritime jurisdiction theory. Rather, plaintiffs argue that these defendants waived or forfeited their personal jurisdiction defense when they filed answers based on Judge Lambros' Orders -- to the extent that those defendants were in the cases during Judge Lambros' superintendencey and were not brought into the cases later -- and/or when they subsequently participated in litigating these cases, either in the Northern District of Ohio or in the MDL Court.

Defendants counter that: First, that they filed answers pursuant to Judge Lambros' Orders "under protest." In other words, given that they were "ordered," they did not waive any defense voluntarily. They point to the answer filed wherein they specifically included the personal jurisdiction defense, thus preserving the defense. Further, they point out that, at the time, they asked for leave to file a motion for interlocutory appeal regarding the issue of personal jurisdiction that the district court never ruled on. Additionally, any participation that they have had in litigating these cases has been pursuant to court orders and not of their own volition. Therefore, defendants say, because there are no contacts with Ohio and they never waived or forfeited such a

defense, there is no personal jurisdiction over them in these cases.

As to the defendants with some Ohio contacts, plaintiffs argue that Ohio recognizes general jurisdiction, and that any contacts the relevant defendants had with Ohio were so continuous and systematic that they are subject to jurisdiction in Ohio notwithstanding that their actions did not give rise to plaintiffs' alleged injuries.

Defendants reply that, assuming that the defendants had contacts with Ohio which were "continuous and systematic," Ohio does not recognize general jurisdiction, and any actions the defendants took in the forum did not give rise to plaintiffs' alleged injuries. Therefore, they are not subject to personal jurisdiction in Ohio, even if the defendants had some Ohio contacts.

In the alternative, plaintiffs argue that, even if the Court finds that there is no personal jurisdiction over all of the filing defendants, and that defendants never waived the defense, then the Court should transfer the cases to jurisdictions in which the defendants would be subject to personal jurisdiction in the interest of justice. Plaintiffs point to Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), arguing that it does not prohibit an MDL

Court from transferring a case to a district other than itself
when it is in the interest of justice.

As to the availability of transfer, defendants counter
that, under Lexecon, an MDL transferee court has no power to
transfer cases to other districts or to itself, and thus the
appropriate remedy is for the Court to grant their motions to
dismiss. Defendants further argue that, even if the Court did
have the power to transfer the cases, transfer would not be in
the interest of justice. This is because, even after Judge
Lambros had concluded that the Northern District of Ohio did not
have jurisdiction over the defendants, plaintiffs continued to
file new cases in that district.

      3.   Relevant Law, Application & Analysis

         i.   Personal Jurisdiction over Non-Resident
              Defendants under Ohio Law

Ohio's long-arm statute is not coextensive with the
federal Due Process Clause.[7] Conn v. Zakharov, 667 F.3d 705, 712

---

[7]      The Due Process Clause of the Fourteenth Amendment to
the United States Constitution "protects an individual's liberty
interest in not being subject to the binding judgments of a
forum with which he has established no meaningful "'contacts,
ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S.
462, 471-72 (1985) (quoting Intn'l Shoe Co. v. Washington, 326
U.S. 310, 319 (1945)). The Due Process Clause "'gives a degree
of predictability to the legal system that allows potential
defendants to structure their primary conduct with some minimum
assurance as to where that conduct will and will not render them

13

(6th Cir. 2012). Thus, "if jurisdiction is not proper under Ohio's long-arm statute there is no need to perform a Due Process analysis because jurisdiction over the defendant cannot be found." Id. at 713.

Under Ohio law, to determine whether the court has jurisdiction over a nonresidential defendant, the Court must determine: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment. Kauffman Racing Equip., L.L.C. v. Roberts, 930 N.E.2d 784, 790 (2010) (citing U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc., 624 N.E.2d 1048 (1994)).

The Ohio long-arm statute lists nine categories of contacts with the forum that will create jurisdiction, but only if the cause of action arises from those contacts.[8] Ohio Rev.

---

liable to suit[.]'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

[8]      The statute provides that:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

    (1) Transacting any business in this state;

    (2) Contracting to supply services or goods in this state;

Code Ann. § 2307.382 (West 2013). Therefore, Ohio does not recognize general jurisdiction. As recently as 2012, the United States Court of Appeals for the Sixth Circuit confirmed that "it

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.
(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev. Code Ann. § 2307.382 (West 2013).

is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." Conn, 667 F.3d at 718.

Not only does Ohio "not appear to recognize general jurisdiction over non-resident defendants[,]" but "to hold otherwise would come dangerously close to collapsing Ohio's two-part jurisdictional inquiry into one, an outcome that the Ohio Supreme Court has repeatedly rejected." Id. (citing Goldstein v. Christiansen, 638 N.E.2d 541, 545 & n.1 (Ohio 1994)).

a. There is no personal jurisdiction over defendants

First, as to the defendants who, all parties agree, never had any contacts with Ohio, there is no personal jurisdiction over them under Ohio law. Plaintiffs do not argue this fact.

Second, regarding the defendants who have some contacts with Ohio that are unrelated to plaintiffs' alleged injuries, Ohio does not recognize general jurisdiction, and thus there is no personal jurisdiction over these defendants. Under Ohio law, to determine whether the court has jurisdiction over a nonresidential defendant, the Court must determine: (1) whether the long-arm statute and the applicable rule of civil procedure

confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment. Roberts, 930 N.E.2d at 790.

Here, the inquiry stops at the first step, because Ohio's long-arm statute does not confer jurisdiction. The statute lists nine categories of contacts with the forum that will create jurisdiction, see supra note 8, and plaintiffs' alleged injuries must arise from those contacts, see Burnshire Dev., LLC v. Cliffs Reduced Iron Corp., 198 F. App'x 425, 432 (6th Cir. 2006). Plaintiffs' complaints do not make any jurisdictional allegations about any of defendants' specific activities that purportedly caused injury to plaintiffs. They do not identify how any of their claims arise from defendants' limited contacts with Ohio. As these defendants' contacts do not fall within the statutorily enumerated situations which give rise to personal jurisdiction, see Conn, 667 F.3d at 712, there is no personal jurisdiction over these defendants.[9]

---

[9]        Prior to the Conn decision, Ohio courts had been inconsistent on the issue of whether Ohio recognizes general jurisdiction. Several cases, most of which are unreported, held that defendants who -- either directly or through their parent companies -- conducted systematic and continuous activity in Ohio were doing business in Ohio and thus were amenable to service there even if the cause of action did not arise from the conduct in the state. See LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1373 (Fed. Cir. 2000) ("when an out-of-state defendant conducts 'continuous and systematic' business in

### b. Defendants did not waive the personal jurisdiction defense

Plaintiffs argue that the defendants with no Ohio contacts waived their right to raise the defense of personal jurisdiction. Defendants counter that they have not waived the defense, and that any participation in this ongoing litigation has been pursuant to court order.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A party can waive its personal jurisdiction defense by, inter alia, failing to make the argument in a motion under Federal Rule of Civil Procedure 12(h)(1)(B)(i), or by participating in the litigation and thereby taking advantage of the forum. Id.; see, e.g., In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig., 15 F.3d 1230, 1236 (3d Cir. 1994) ("a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or

Ohio, it is 'doing business' in Ohio and is amenable to process there"); Keybanc Capital Mkts. Inc. v. Alpine Biomed Corp., 2008 U.S. Dist. LEXIS 112156, at *6-7 (N.D. Ohio Mar. 7, 2008) (continuous and systematic contacts are sufficient); Estate of Thomson v. Toyota Motor Corp. Worldwide, 2007 U.S. Dist. LEXIS 44344, at *4 (N.D. Ohio June 19, 2007) (same); Pierson v. St. Bonaventure Univ., 2006 U.S. Dist. LEXIS 4662, at *3 (S.D. Ohio Jan. 23, 2006) (same). However, Conn provides a more recent and on-point discussion about how Ohio courts do not recognize general jurisdiction.

demonstrates a willingness to engage in extensive litigation in the forum."); Reliable Tire Distribs., Inc. v. Kelly Springfield Tire Co., 623 F. Supp. 153, 155-56 (E.D. Pa. 1985) ("There are limits in the extent to which a defendant can actively litigate a case without waiving defenses of personal jurisdiction and improper venue"); Burton v. N. Dutchess Hosp., 106 F.R.D. 477, 480 (S.D.N.Y. 1985) ("It is well settled that lack of personal jurisdiction is a privileged defense that can be waived" by formal submission or by conduct). Here, defendants neither failed to raise the lack of personal jurisdiction timely nor participated in the litigation of their own volition.

First, as early as 1987, while the cases were still in the Northern District of Ohio, defendants raised the issue of lack of personal jurisdiction. See Order No. 41, Pls.' Resp. in Opp., Ex. E at 1, 02-md-875, ECF No. 2129-7 (statement by Judge Lambros that there were insufficient "minimal state contacts to invoke in personam jurisdiction.").

Additionally, in the MDL, Administrative Order No. 5 ("AO 5"), issued in 1995, denied without prejudice all outstanding motions to dismiss that were pending at the time AO 5 was entered, and suspended the filing of additional motions.[10] When this Court implemented AO 25 in 2011, again any pending

---

[10]       AO 5 is available at http://www.paed.uscourts.gov/documents/MDL/MDL875/adord5m.pdf.

motions to dismiss were denied without prejudice. At the same time, defendants again requested to have the Court decide the personal jurisdiction issue, but were ordered by the MDL Court to participate in the litigation prior to being given the chance to file the instant motions to dismiss. Additionally, Magistrate Judge Hey, ruling on behalf of the MDL 875 Court, issued orders on November 30, 2011 that denied other such motions without prejudice pursuant to AO 25.[11] Essentially, defendants are now, for the first time since 1989, being given the chance to argue the issue of personal jurisdiction before the Court.

Second, it is apparent from the record that despite filing answers, defendants did not intend to waive the defense.[12] In addition to including standard language about the personal jurisdiction defense, the answers included prefaces that specifically stated that defendants were filing the answers "under protest" pending review by the Court of Appeals of Judge Lambros' decision to transfer rather than dismiss the cases. In seeking to comply with Judge Lambros' orders, see Order No. 17,

---

[11]    These orders are available at http://www.paed.uscourts.gov/mdl875m.asp.

[12]    Not all of the defendants who are currently in the MARDOC cases were in the cases as early as the time when Judge Lambros required defendants to file answers. For example, American-Hawaiin was added to the cases after 1989. Clearly, the plaintiffs' waiver arguments would not be applicable to the defendants who were added to the cases later. See Hr'g Tr. 16.

the defendants faced a Hobson's choice: they could either have agreed to a transfer of the cases to another jurisdiction (and thus lost the ability to assert cross-claims against manufacturer defendants), or they could have chosen to remain in the Northern District of Ohio and lost the defense of lack of personal jurisdiction.

By filing answers which clearly identified the defense, <u>see</u> Fed. R. Civ. P. 8(b), while at the same time seeking interlocutory review of Judge Lambros' order, defendants preserved and did not waive the defense.

### ii. <u>MDL Court May Not Transfer Cases</u>

Nor is transfer of the cases to other jurisdictions permissible. Under 28 U.S.C. § 1404(a), a district court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" if it is in the interest of justice, for the convenience of the parties and witnesses.

However, in the MDL context, an MDL transferee court cannot transfer such a case by invoking Section 1404(a). Rather, section 1407 governs the mechanics of multidistrict litigation, and Section 1407(a) provides that, at the end of pretrial proceedings in the MDL transferee court, the Judicial Panel on Multidistrict Litigation ("JPML") "shall" remand each case to

the transferor court unless the case was previously terminated.[13] 28 U.S.C. § 1407(a).

In a seminal case, the Supreme Court held that, after an MDL transferee court has concluded pretrial proceedings, the court cannot then transfer the case to itself for trial under Section 1407(a). Lexecon, 523 U.S. at 26. Rather, because Section 1407(a) employs the term "shall," it obligates the JPML -- and no other entity -- to either dismiss an MDL action following pretrial proceedings, or to remand the MDL case to its original transferor court when, "at the latest, . . . pretrial proceedings have run their course." Id. at 34-35. The Supreme Court was sweeping in its language that nothing "can unsettle the straightforward language imposing the Panel's responsibility to remand[.]"[14] Id. at 40.

It follows, therefore, that after an MDL transferee court has seen an MDL case through the pretrial phase, the MDL court can either rule on the dispute, or suggest to the JPML

---

[13]    Such has been the course of conduct in MDL 875. When the Court has seen a case through the summary judgment phase and there are no remaining motions in the case, the Court enters a Suggestion of Remand, which suggests to the JPML that it transfer the case back to the transferor court for trial. See Administrative Order No. 18, available at http://www.paed.uscourts.gov/documents/MDL/MDL875/Administrative _Order_18.pdf; see also Rule of Procedure of the U.S. Panel on Multidistrict Litigation 10.1(b).

[14]    The transferor court may, upon remand of course, transfer the case to another jurisdiction under Section 1404(a).

that it be remanded to the transferor court for trial.

Succinctly put, Lexecon does not allow an MDL transferee court

to transfer a case back to itself for trial; nor does Lexecon

leave room for the MDL transferee court to transfer MDL cases to

other districts directly. Id.

Plaintiffs cite to an unreported District of Nevada

case for the proposition that while Lexecon prohibits the MDL

transferee court from transferring a case to itself, the MDL

court could transfer cases to other districts pursuant to the

following statutes: 28 U.S.C. § 1631,[15] and/or 28 U.S.C. §

1406(a),[16] so long as the plaintiffs waive their right to a

remand under Section 1407(a). In Re: W. States Wholesale Nat.

Gas Antitrust Litig., MDL 1566, 2010 WL 2539728 (D. Nev. June 4,

2010).

The language upon which plaintiffs rely is dicta in

that the Nevada court declined to transfer the case because

Plaintiff had not "requested a transfer or even suggested the

---

[15]     This section provides that, if the "court finds that
there is a want of jurisdiction, the court shall, if it is in
the interest of justice, transfer such action or appeal to any
other such court in which the action or appeal could have been
brought at the time it was filed or noticed[.]" 28 U.S.C. § 1631
(2012).

[16]     This section provides that, "The district court of a
district in which is filed a case laying venue in the wrong
division or district shall dismiss, or if it be in the interest
of justice, transfer such case to any district or division in
which it could have been brought." 28 U.S.C. § 1406(a).

possibility of transfer" until the motion for reconsideration stage. Id. In any event, to the extent that plaintiffs claim that the holding in the case suggests that this Court is authorized to transfer plaintiffs' cases, the Court disagrees with the conclusion that, under Lexecon, such a transfer would be permissible.[17]

Even if this Court were to find that transferring the MARDOC cases would not be contravening Lexecon, the Court would be required to find that good cause to transfer the cases existed. None is present.

Plaintiffs continued filing thousands of cases in the Northern District of Ohio after Judge Lambros stated in 1989 that the court did not have personal jurisdiction over the defendants. See, e.g., Stanifer v. Brannan, 564 F.3d 455, 457-61 (6th Cir. 2009) (affirming the district judge's decision not to transfer because the plaintiff filed the case "without having the slightest reason to believe that he could obtain personal

---

[17]     Even though the MARDOC plaintiffs counter that they are willing to waive their right to remand under Section 1407(a), if this Court were to transfer the instant cases to another district, it would be undermining the holding of Lexecon. The Supreme Court was clear in its directive that one cannot "simply [] ignore the necessary consequence" of a case being self-assigned by a transferee court, which is that it would "conclusively thwart[] the Panel's capacity to obey the unconditional command of § 1407(a)." Lexecon, 523 U.S. at 36. In fact, "no exercise in rulemaking can read [the Panel's remand] obligation out of the statute." Id. at 37.

jurisdiction over the Defendants within this jurisdiction" and finding that, as a result, justice would not be served by a transfer). Being on notice that there was no personal jurisdiction over the defendants in the Northern District of Ohio, and having chosen to continue the litigation there, Plaintiffs cannot complain that it is now unjust for the motions to dismiss to be granted.[18]

Given that there is no personal jurisdiction over the defendants and that transfer to other districts is not permissible, the motions to dismiss will be granted.


B.    Motions to Dismiss based on Improper Service under Rule 4

1.    Arguments by the Parties

From the outset of the litigation, plaintiffs attempted service on defendants by mailing the service papers, return receipt requested, to defendants' business addresses. The mailings were done by counsel.

---

[18]    For the same reasons, it would not be appropriate for this Court to suggest remand of these cases to the Northern District of Ohio for the transferor court to sort out issues pertaining to jurisdiction and/or transfer. Since the 1990's, plaintiffs have not pursued the possibility of the MDL Court's suggesting remand of these cases for those purposes. Additionally, even if this Court could transfer cases notwithstanding Lexecon, there would be no good cause for the MDL Court to transfer the cases to Ohio or any other jurisdiction.

Plaintiffs argue that they made service in these cases as directed by Judge Lambros under Ohio law, and that under Ohio law, they were permitted to serve original process upon defendants by counsel mailing the service papers (complaint and summons) to defendants at their business addresses. Plaintiffs claim that this type of service was considered effective by Judge Lambros, so long as plaintiffs could show the defendants had actual notice of the actions. Plaintiffs have provided signed green cards evidencing receipt by the defendants of the service papers.

Defendants reply that service by counsel (instead of by the Clerk of Court in the state court) is ineffective under Ohio law and that only the mailing of the service papers, certified mail, return receipt processed by the Clerk of Court is effective.

Two questions are raised by these arguments. One, does Ohio law permit plaintiffs to serve original process upon an out-of-state defendant by having counsel (and not the Clerk of Court) mail the service papers to defendant? Two, did Judge Lambros find that service of process conducted pursuant to state law would be considered effective provided plaintiff could show defendants had "actual notice" of the action?

Ohio Civil Rule 4.3(B)(1), by way of Rule 4.1(A)(1)(a), allows service by certified mail, but the rule

provides that the Clerk of Court shall perform the mailing. See Ohio Civ. P. 4.1(A)(1)(a) (providing that "[t]he clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing").

In Piercey v. Miami Valley Ready-Mixed Pension Plan, 110 F.R.D. 294, 295 (S.D. Ohio 1986), the court addressed the issue of whether under Ohio law, service of process sent via certified mail by counsel rather than by the Clerk of Court is sufficient for purposes of entering default judgment. The court held that, despite the actual wording of the rule, "certified mail service by an attorney which otherwise complies with the federal and Ohio rules is valid in this Court" because such service would not: (1) affect the "probability that this method of service will effectuate notice[,]" (2) nor "impair the cost-effectiveness or efficiency of such service"; and, (3) provided that certain safeguards were followed, would not undermine the "verification function of the clerk." Id. at 296. Regarding these safeguards, the court concluded that, in order to prevent

> abuse either in the use of certified mail service or in the pursuit of an entry of default based upon that type of service . . . [c]ounsel must file . . . (1) a copy of the cover letter to defendant, if any, which accompanied the Complaint and Summons; (2) an executed return of service, completed by the attorney; and (3) the signed green card, addressed to counsel, which accompanied the documents sent by certified mail, return

receipt requested. Counsel must also prepare and file an affidavit to accompany these items. The affidavit must set forth (1) that the Complaint and Summons were sent, by counsel, to defendant by certified mail, return receipt requested; (2) the date that the documents were sent in this manner; and (3) that the green card was signed and mailed back to counsel.

<u>Id.</u> (emphasis added). These safeguards were required to protect the opposing party, at least in the context of a default judgment which were the circumstances in <u>Piercey</u>. The language that the <u>Piercey</u> court used in holding that the safeguards were necessary when counsel took on the role of the Clerk "<u>either</u> in the use of certified mail service <u>or</u> in the pursuit of an entry of default based upon that type of service" supports the position that the court intended these proofs to be filed whenever counsel, instead of the Clerk, effectuates service by certified mail.[19] <u>Id.</u> (emphasis added).

---

[19]     The only relevant case law citing to <u>Piercy</u> is <u>LSJ Inv. Co., Inc. v. O.L.D., Inc.</u>, 167 F.3d 320 (6th Cir. 1999). This case dealt with the validity of a default judgment in light of the service of process used, albeit in a slightly different permutation. In <u>LSJ</u>, the certified mail sent to one defendant was returned by the Post Office as "Attempted Not Known." <u>Id.</u> at 323. Thereafter, the plaintiff attempted service by regular mail by sending it himself. <u>Id.</u> Such service is authorized by Ohio Civil Rule 4.6(C) if plaintiff first unsuccessfully attempted to serve a party by certified mail. However, as with Rule 4.3(B)(1), the Clerk must mail the documents. Citing <u>Piercey</u>, the court concluded that service was improper, especially because there was no proof of service. <u>Id.</u> at 324. In <u>LSJ</u>, the Sixth Circuit recognized that when counsel takes over the Clerk's mailing function, some evidence of service must be

## 2. <u>Relevant Law, Application & Analysis</u>

<u>Piercey</u> stands for the general proposition that under Ohio Law, service of original process is effective when counsel mails the process papers required by the Ohio Rule 4.3(B)(1) to defendants provided that there is sufficient proof that verifies that through the mailing defendant received notice of the pending action.

Applying <u>Piercey</u>, and under the circumstances of this case, the court holds that service of original process here satisfies Ohio law provided that plaintiffs can produce sufficient proof which verifies and confirms that through the mailing of the process papers, defendant received notice of the pending action.

It is recognized that, in these cases, plaintiffs have not satisfied <u>all</u> of the requirements of <u>Piercey</u> for verification of service, <u>i.e.</u>, they have not provided the cover letter to the defendant, and have not filed affidavits detailing the circumstances of the mailing. Plaintiffs claim, however, that they can produce the signed "green cards" evidencing the signed return receipt. Assuming that plaintiffs can so show, the question becomes, is the signed "green card" sufficient evidence of service to satisfy Ohio Law Rule 4.3(B)(1)?

---

available and, at least in the context of a motion for default judgment, the six proofs from <u>Piercey</u> must be presented. <u>Id.</u>

The issue was previously addressed by Judge Lambros. On November 3, 1987, Judge Lambros held a hearing to discuss the general management issues to be addressed in MARDOC given the scope of the litigation. Thereafter he entered Order No. 17,[20] on November 28, 1987, which provided that if service was made pursuant to state law, "the return receipt of the registered mail would serve as proof of actual notice [to defendant]."[21] Under these circumstances, the court finds that a signed returned green card, evidencing receipt by defendant of the original process papers, serves as sufficient proof of service to satisfy the verification requirements of Ohio Rule 4.3(B)(1).[22]

---

[20]     While the relevant order refers to "actual notice," the reference to actual notice is not construed to mean that actual notice alone would satisfy the Ohio rules or due process requirements of service of process.

[21]     Although Judge Lambros employed the term "registered mail," there is no meaningful difference between "registered mail" and "certified mail" for purposes of effecting service. Registered mail, inter alia, provides a receipt showing that an item was mailed, and a record of delivery including the recipient's signature is maintained by the Postal Service. See http://about.usps.com/publications/pub370/pub370_012.htm. Certified mail requires the signature of the recipient, and can be combined with a return receipt so that the sender can see the signature of the person who accepts the mail. See https://www.usps.com/send/insurance-and-extra-services.htm.

[22]     Judge Lambros' ruling is the law of the case and may not be disturbed without good cause. See In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (noting that a transferee court may not disturb the earlier rulings of the transferor court without good cause).

Accordingly, the Motions to Dismiss for improper service will be denied.[23]

**IV.    CONCLUSION**

For the reasons outlined above, the motions to dismiss for lack of personal jurisdiction listed in Exhibit "A," attached, will be granted, and the defendants who filed the motions will be dismissed from the cases.

As to the motions to dismiss due to improper service of process listed in Exhibit "B," attached, the motions will be denied.

An appropriate order follows.

---

[23]    Magistrate Judge Hey is directed to provide defendants an opportunity to challenge the authenticity and genuineness of any green cards produced by plaintiffs.